IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRE G. LEWIS, Sr., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 20-cv-00514-JPG |
| | ) |
| LT. WHITING, | ) |
| SGT. ROBERTS, | ) |
| CPT. SCOTT, | ) |
| SGT. BERDA, | ) |
| OFFICER WINCHESTER, | ) |
| OFFICER RENELA, | ) |
| LT. HANES, and | ) |
| JEFFERSON COUNTY SHERIFF | ) |
| BULLARD, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

Plaintiff Andre Lewis, Sr.'s Second Amended Complaint is now before the Court for preliminary review. (Doc. 44). Lewis brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment due process rights during proceedings for three disciplinary tickets he received at Jefferson County Jail. (*Id*. at 1-14). Lewis seeks money damages and injunctive relief.[1] (*Id*. at 10-11).

The Second Amended Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from an immune defendant. 28 U.S.C. § 1915A. The factual

---

[1] Lewis specifically seeks an order prohibiting officials at Jefferson County Jail from engaging in unethical behavior. (Doc. 44, p. 10).

1

allegations of the *pro se* complaint are liberally construed at this stage. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Background

Lewis filed this action pursuant to 42 U.S.C. § 1983 to challenge three disciplinary tickets at Jefferson County Jail that resulted in his punishment with 67 days in segregation. (Doc. 26). Lewis claims he suffered a deprivation of a protected liberty interest without due process of law in violation of the Fourteenth Amendment when he received this punishment without proper notice or a fair hearing during his detention at the Jail. (*Id.*). Following screening of the First Amended Complaint, Lewis was allowed to proceed with Fourteenth Amendment claims against Lieutenant Whiting for the second ticket issued April 18, 2020 (Count 2) and against Sergeant Roberts and Captain Scott for the third ticket issued May 7, 2020 (Count 3). (Docs. 27 and 28). All other claims and defendants were dismissed at screening. (*Id.*). For screening purposes, the Court applied the legal standard for due process claims brought by pretrial detainees, while recognizing that a more stringent standard would apply if Lewis' status as a prisoner was confirmed during litigation. (*Id.*).

In lieu of an answer, Whiting, Roberts, and Scott filed a motion to dismiss Counts 2 and 3 under Federal Rule of Civil Procedure 12(b)(6), requesting dismissal of his claims under the more stringent legal standard applicable to convicted persons after pointing out that Lewis was, in fact, a convicted person during the relevant time period. (Doc. 37). Defendants pointed to public records that confirmed Lewis' status. (*Id.*). After taking judicial notice of the same, the Court granted the motion to dismiss Counts 2 and 3 without prejudice. (*Id.*). Lewis was granted leave to file a Second Amended Complaint no later than March 11, 2022. When he did not, this action was dismissed on March 18, 2022. (Docs. 42 and 43).

On April 18, 2022, the Court received Lewis' Second Amended Complaint with no explanation for the late filing. (Doc. 44). Almost three months later, the Court received Lewis' motion to reopen the case, along with an explanation for the late filing. (Doc. 45). Lewis explained that he mailed the Second Amended Complaint via the United States Postal Service on March 2, 2022, more than a week before the deadline for filing it. (*Id*.). However, the postal service did not deliver the mail to the Court until six weeks later. (*Id*.). The postmark on the envelope containing the Second Amended Complaint confirmed Lewis' account. (*See* Doc. 44, pp. 13-14). The Court granted his motion to reopen this case on July 12, 2022. (Doc. 46). The Second Amended Complaint is now subject to review under Section 1915A.

## Second Amended Complaint

According to the Second Amended Complaint (Doc. 44, pp. 1-11), Lewis challenges his punishment with 67 days of segregation for three disciplinary tickets he received at Jefferson County Jail in 2020: (a) Ticket #1 issued April 5, 2020 (7 days); (b) Ticket #2 issued April 18, 2020 (30 days); and (c) Ticket #3 issued May 7, 2020 (30 days). (*Id*.).

**A.     Ticket #1 – April 5, 2020**

On April 5, 2020,[2] Officer Winchester issued Lewis a ticket for disobeying an order in violation of Rule 102. (*Id*. at 1-2). Lewis asked the officer to wear gloves and a mask while dispensing medication in the "early stages of the coronavirus" pandemic, and Lieutenant Whiting responded by running into Lewis' cell with a gun and ordering him to face the wall. Lewis claims he obeyed Whiting's order, and the ticket was false. (*Id*.).

---

[2] Lewis frequently refers to the year 2000, in reference to events that occurred in the "early days of the coronavirus" pandemic. (Doc. 44). The early stages of the COVID-19 pandemic occurred in 2020, so the Court will use 2020, not 2000, in reference to these dates.

At the disciplinary hearing for this first ticket, the disciplinary hearing officer (DHO) explained that he performed an independent investigation and would not interview additional witnesses. Although the DHO reviewed video footage of the incident and found that Whiting's statements against Lewis were false, the DHO nevertheless found Lewis guilty of the rule violation and punished him with a week in the "hole." (*Id.*).

Lewis filed an appeal on April 8, 2020, and Captain Scott denied it. Scott explained that Lewis was seen yelling and waving his hands belligerently at the officer, even though he complied with the order to turn around and face the wall. Lewis says none of this was true. He challenges the denial of his appeal as unjustified. (*Id.*).

**B.      Ticket #2 – April 18, 2020**

Just fifteen minutes before Lewis was scheduled for release from the "hole" for the first time on April 18, 2020, Winchester approached his cell and asked for his name. (*Id*. at 3). The officer was not assigned to work in the area and never came to the "hole" while Lewis was there. Moreover, the Jail maintained a list of inmates' cell assignments and names, so Winchester could have looked at the list to find out his identity. For these reasons, Lewis refused to identify himself. When the officer asked for his name, Lewis remained silent. (*Id.*).

Winchester issued Lewis a second disciplinary ticket for willful disrespect of staff in violation of Rule 202. Whiting refused "Lewis' review" and gave him an additional thirty days in the "hole" because he claimed that Lewis called "his officer a bitch" when Lewis actually just refused to give Winchester his name. The "hearing" on this ticket took place at Lewis' cell door, where he was denied an opportunity to call witnesses, to hear the evidence in support of the ticket, or to receive a copy of his "rebuttal complaints." (*Id.*).

**C.      Ticket #3 – May 7, 2020**

On May 7, 2020, Sergeant Roberts wrote Lewis up for a violation of Rule 102 for refusing to obey an order.  (*Id*. at 4).  Before the matter was even set for hearing before a DHO, Captain Scott found Lewis guilty of the rule violation while Lewis was still standing at the kiosk and attempting to submit an appeal of the second ticket.  The following day, Lieutenant Hanes came to Lewis' cell and conducted a hearing after the fact.  Lewis was found guilty without receiving any opportunity to call witnesses, hear evidence supporting the finding, or receive a statement of the reasons for the decision.  He was given another thirty days in the "hole."  (*Id*.).

**D.      Conditions in the "Hole"**

Lewis maintains that all three tickets were issued because he asked staff to use personal protective equipment (PPE) during the COVID-19 pandemic.  (*Id*. at 5).  While in the hole, he wrote to the federal court in Evansville, Indiana, and asked for help getting Jefferson County Jail officials to wear PPE to protect the inmates being held there.  "Weeks later," the sheriff issued an order requiring jailers to wear masks, and "some" became angry and conspired to keep him in the hole until he returned to Indiana.  (*Id*. at 6).

Lewis' hearing aids were lost during his transfer into the "hole."  (*Id*. at 7).  His medical records documented his diagnoses with degenerative disc disease, a herniated disc, neuropathy in both legs, and mental illness (including depression, anxiety, ADHD, and PTSD).  He was nevertheless confined to a cell and denied fresh air, sunlight, and outdoor recreation.  (*Id*. at 8).  The plumbing backed up regularly, and he had no access to a Holy Qur'an to practice his religion.  (*Id*.).

In addition, Lewis was denied forms necessary to challenge his conviction under 28 U.S.C. § 2254. Staff refused to give him the forms, saying they had no access to them. This, in turn, interfered with Lewis' court access. (*Id.*).

Lewis also maintains that Sheriff Bullard was negligent in his hiring of staff from "Cpt. Scott on down." (*Id.* at 9). He was also negligent in the operation, maintenance, supervision, and security of the facility. Sergeant Berda and Officer Renela were "just as guilty." (*Id.* at 10).

## Discussion

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to designate the following enumerated counts in this *pro se* action:

> **Count 1:** Fourteenth Amendment claim against Winchester, Whiting, and/or Scott for depriving Lewis of a protected liberty interest without due process of law in connection with the first disciplinary ticket issued April 5, 2020, which resulted in punishment with 7 days in the "hole."
>
> **Count 2:** Fourteenth Amendment claim against Winchester and/or Whiting for depriving Lewis of a protected liberty interest without due process of law in connection with the second disciplinary ticket issued April 18, 2020, which resulted in punishment with 30 days in the "hole."
>
> **Count 3:** Fourteenth Amendment claim against Roberts, Scott, and/or Hanes for depriving Lewis of a protected liberty interest without due process of law in connection with the third disciplinary ticket issued May 7, 2020, which resulted in punishment with 30 days in the "hole."
>
> **Count 4:** Eighth Amendment claim against Defendants for subjecting Lewis to unconstitutional conditions of confinement in the "hole" in April, May, and/or June 2020.

**Any other claim that is mentioned in the Second Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Counts 1, 2, and 3**

Prison officials have significant latitude to punish convicted prisoners for misconduct, and this includes punishment with segregation.[4] *Hardaway v. Meyerhoff*, 734 F.3d 740 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)).  When presented with a due process claim arising from allegations of an unfair disciplinary hearing, the Court considers: (1) whether a protected liberty interest necessitated due process protections in the first place; and, if so, (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements.  *See id*. (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)); *Sandin v. Conner*, 515 U.S. 472 (1995).  As for the first step of this analysis, the Court considers "the combined import of the duration of the segregated confinement *and* the conditions endured." *Id*. (citing *Marion*, 559 F.3d at 697 (emphasis in original)).  However, when the duration in segregation is limited, the Court need not undertake an extensive analysis of the conditions before finding that no protected liberty interest was at stake. *Atwater v. Nichols*, App. No. 21-2510, 2022 WL 1468698 (7th Cir. decided May 10 2022) (quoting *Marion*, 559 F.3d at 697-98) ("Prisoners generally have no liberty interest in avoiding short-term placement in disciplinary segregation, but an interest may arise when 'the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh' when compared to normal prison life.").

---

[4] In contrast, a pretrial detainee cannot be punished at all.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The government may only take reasonable measures to effectuate pretrial detention, such as those steps necessary to maintain safety and security at the facility.  *See Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)).  When considering these same claims at screening of the First Amended Complaint, the Court noted that Lewis "appeared" to be a pretrial detainee, triggering "application of the standard described in *Rapier* for all three disciplinary tickets."  (Doc. 27).  As a pretrial detainee, he was entitled to due process protections before he was punished at all.  (*Id*.).  Given his status as a convicted person, this standard is inapplicable.

The Seventh Circuit has found no protected liberty interest in cases involving segregation for time periods similar to those in this case. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days in segregation); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (2 months in segregation, demotion to C-grade, and recommendation for transfer); *Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997) (70 days in segregation)). The length of Lewis' confinement in the hole was limited to 7 days for Ticket #1, 30 days for Ticket #2, and 30 days for Ticket #3. (Doc. 41, p. 6). The punishment for each ticket was shorter than the punishment at issue in *Townsend* (59 days), *Hoskins* (2 months), and *Thomas* (70 days). And, Lewis' total punishment with 67 days in segregation was comparable to these cases where the Seventh Circuit found no protected liberty interest at stake and no right to due process protections in the first place.

Moreover, the Second Amended Complaint describes conditions that are not atypical or unusually harsh. He refers to underlying medical diagnoses, lost hearing aids, plumbing backups, lack of outdoor recreation, lack of access to a Holy Qur'an, and lack of access to habeas forms used to challenge his conviction. There is no indication that these conditions were any different, or worse, than the ones he faced in the general population. Moreover, Lewis speculates that he was held in segregation until his transfer to Indiana because he angered "some" staff members when he requested their use of PPE. However, he admits that the sheriff's order requiring staff to use PPE came down many weeks after he first requested it and after being confined in segregation in the interim. The chronology of events does not support his speculative claims of retaliation, conspiracy, or excessive confinement in segregation. He offers no indication that the defendants even knew of, let alone caused, his exposure to atypical or unusually harsh conditions.

Given the limited duration of his confinement in segregation for each ticket—or all of them combined—the Court finds that no protected liberty interest was at stake in the first place. He also

8

describes no conditions in segregation that were atypical or unusually harsh. The Fourteenth Amendment due process claims in Counts 1, 2, and 3 shall now be dismissed with prejudice.

## Count 4

The Eighth Amendment claim for exposure to unconstitutional conditions of confinement meets with the same fate as the related due process claims. A two-part inquiry is used to evaluate such claims. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). To satisfy the objective inquiry, the Court must determine whether the complained-of condition is sufficiently serious. *Id*. To satisfy the subjective inquiry, the Court must determine whether each defendant responded to the serious risk of harm posed to the plaintiff's health or safety with deliberate indifference. *Id*.

Lewis describes miscellaneous conditions that he endured in segregation, including his prolonged placement there, his lack of access to habeas forms, the denial of outdoor recreation, plumbing backups, and lack of access to a Holy Qur'an. When standing alone or combined, these conditions are not sufficiently serious to trigger constitutional protections under the Eighth Amendment.

Even if they were, Lewis names no individual defendants in connection with this claim. Section 1983 liability hinges on personal responsibility for a constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017). The doctrine of *respondeat superior* is inapplicable to § 1983 claims. *Id*. Prison officials cannot be liable for inhumane conditions of confinement unless they knew of and disregarded an excessive risk to inmate health or safety posed by the conditions. *Farmer,* 511 U.S. at 837-38. Lewis names no defendant who knew of the

conditions he endured in segregation and responded to them with deliberate indifference. Accordingly, Count 4 shall be dismissed with prejudice.[5]

## Disposition

**IT IS ORDERED** that the Second Amended Complaint (Doc. 44) fails to state any claim for relief against the defendants and shall be dismissed with prejudice.  This includes **COUNTS 1, 2, 3,** and **4** against **ALL DEFENDANTS**.  This action is **DISMISSED with prejudice**.

Lewis is **ADVISED** that the dismissal counts as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Lewis is **ADVISED** that his obligation to pay the filing fee for this action was incurred when the action was filed, thus the filing fee of $350.00 remains due and payable.  28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Lewis wishes to appeal this Order, he may file a notice of appeal with this Court within thirty (30) days of the entry of judgment. FED. R. CIV. P. 4(A)(4).  If Lewis does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467.  Finally, if the appeal is found to be nonmeritorious, Lewis may incur a "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

---

[5] The Court has not designated separate claims for each of the conditions that Lewis lists because he identifies no defendants in connection with any of them.  (Doc. 44, pp. 1-14). Instead, he mentions them in conjunction with his overall complaint about the general conditions of his confinement.  (*Id*.).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED**.

DATED: **12/14/2022**                                         s/J. Phil Gilbert
                                                              **J. PHIL GILBERT**
                                                              **United States District Judge**